**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
**In re:**                                                              **Chapter 11**

**CECILIA KEMPTON,**                                    **Case No. 19-78292 (AST)**

                              **Debtor.**
----------------------------------------------------------------X

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING SALE**
**OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS,**
**ENCUMBRANCES, AND OTHER INTERESTS, AND GRANTING OTHER RELATED**

**TO:   THE HONORABLE ALAN S. TRUST,**
        **UNITED STATES BANKRUPTCY JUDGE**

      Cecilia B. Kempton, the above-captioned debtor and debtor in possession (the "Debtor"), by her counsel, White & Wolnerman, PLLC, hereby submits this motion (the "Motion") pursuant to sections 363 and 105 of the Bankruptcy Code for entry of an Order approving the sale of real property located at 28 Jagger Lane, Westhampton New York 11977 (the "Property") free and clear of all liens, claims, and encumbrances, and other interests, and granting relating relief. In support of this Motion, the Debtor respectfully represents as follows:

**Background**

1. On December 6, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. No trustee, examiner or official committee of unsecured creditors has been appointed.

3. Additional facts concerning the background of the Debtor are contained in the Declaration Pursuant to Local Bankruptcy Rule 1007-4 of Cecilia B. Kempton, dated December 6, 2019 [Doc. No. 3] (the "Kempton Declaration"), which is incorporated herein by reference.

**The Sale Process and Result Thereof**

4. On December 18, 2019, the Debtor filed an Application to Retain Brown Harris Stevens Westhampton LLC and Scala Properties as Co-Brokers (ECF Doc. No. 22) to market and sell the Property. On March 2, 2020, the Court entered an order granting the Co-Brokers' retention (Doc. No. 33).

5. Shortly after being retained, however, the Co-Brokers' ability to show the Property to prospective purchasers was severely limited due to restrictions put in place on account of the Coronavirus pandemic. Immediately upon the easing of these restrictions, the Co-Brokers continued to aggressively market the Property for sale. The result of this rigorous sale process is an offer to purchase the Property at a purchase price of $2,495,000.00, as memorialized in the Residential Contract of Sale between the Debtor and Yuri Shkuro ("Purchaser") annexed hereto as Exhibit A. Upon execution of the Residential Contract of Sale, the Purchaser provided the Debtor with the required $249,500.00 down payment. As set forth therein, the Residential Contract of Sale provides, among other things, for a closing on or about October 15, 2020. The Residential Contract of Sale also provides for a mortgage commitment contingency which conditions Purchaser's obligations under the Residential Contract of Sale upon Purchaser procuring a 30-year mortgage in the amount of $1,996,000.00. *See*, Residential Contract of Sale, § 8.

6. The Debtor submits that the sale of the Property to Purchaser pursuant to the Residential Contract of Sale will provide this estate with the means to confirm the Debtor's proposed Chapter 11 Plan of Reorganization [Doc. No. 98]. Specifically, the Debtor submits that the proceeds of sale will be sufficient to pay, in full on the Effective Date of the plan, all allowed claims secured by the Property, all administrative expense claims and all unsecured claims, as well

as to fund any disputed claims reserve. As set forth in the proposed plan, the only remaining creditors are the two mortgagees secured by real property located at 256 St. James Ave., St. Simons Island, Georgia 31522 (the "Simons Island Property") in which the Debtor's owns a fifty percent (50%) tenancy in the entirety interest, which mortgagees will continue to paid over time in accordance with the terms of their respective mortgages. In short, consummation of the proposed sale would allow for a 100% distribution to all creditors and, therefore, should be approved.

### Jurisdiction and Venue

7. This court has jurisdiction to consider this Motion and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Summary of Relief Requested

8. By this Motion, the Debtor requests entry of an order pursuant to Sections 363 and 105 of the Bankruptcy Code approving the sale of the Property to Purchaser in accordance with the terms of the Residential Contract of Sale.

### Basis for Relief Requested

The Sale of the Property is an Exercise of the Debtor's Sound Business Judgment

9. Bankruptcy Code section 363(b) governs transactions outside the ordinary course of business involving property of the debtor's estate. Specifically, that section provides, in relevant part, that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate .... " 11 U.S.C. *§* 363(b).

10. Under applicable case law, a transaction must represent a reasonable exercise of business judgment on the part of the debtor in possession to be approved under section 363(b) of the Bankruptcy Code. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 772 F.2d 1063, 1071 (2d Cir. 1983); *In re*

*Adelphia Communications Corp.,* No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002); *see also, In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993), *quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy).

11. In addition, Bankruptcy Code section 105(a) grants the Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. *§* 105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." *In re Flores*, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003).

12. As set forth in the Kempton Declaration and throughout this case, this bankruptcy filing was necessary to stay pre-petition foreclosure proceedings involving the Property and allow the Property to be properly marketed and sold at market value. The Debtor is pleased to submit that the purpose of this bankruptcy has been, in large part, accomplished. By selling the Property, the Debtor anticipates making a 100% distribution to unsecured creditors as well as creditors secured by the Property, and distributing the remaining sale proceeds, if any, to the Debtor in accordance with the priorities set forth in the Bankruptcy Code.

13. For these reasons, the Debtor's sale of the Property is within the Debtor's sound business judgment and warrants approval by the Court.

The Property Should be Sold Free and Clear of
<u>Liens, Claims, Encumbrance and other Interests</u>

14. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under Bankruptcy Code section 363(b) free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interest; (ii) the entity holding the lien, claim or encumbrance consents to the sale; (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. 11 U.S.C. § 363(f). *See In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) (Section 363 permits sales of assets free and clear of claims and interests. It thus allows purchasers ... to acquire assets [from a debtor] without any accompanying liabilities"); *In re Dundee Equity Corp*., No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

15. The Debtor requests that the Court authorize the sale of the Property free and clear of all liens, claims, encumbrances, and other interests (collectively, "Liens"). Here, the Debtor submits that Section 363(f) is satisfied as the interest the price at which the Property is to be sold is greater than the aggregate value of all Liens on the Property, and that the holders of such Liens could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. In addition, at least a portion of MLF3 Jagger's interest in the Property is the subject of a bona fide dispute.

16. Furthermore, all entities holding Liens on the Property will have received notice of this Motion and the related hearing. All parties in interest will have been given sufficient

opportunity to object to the relief requested in this Motion, and any such entity that does not object to the sale should be deemed to have consented. *See Futuresource LLC v. Reuters Ltd*., 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold") (internal citations omitted); *Hargrave v. Township of Pemberton (In re Tabone, Inc.),* 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa 1988) (same); *see also In re Enron Corp*., 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). As such, to the extent that no party holding a Lien objects to the relief requested in this Motion, the sale of the Property free and clear of all Liens satisfies section 363(f)(2) of the Bankruptcy Code.

The Purchaser Should be Afforded All Protections
Under Section 363(m) as a Good Faith Purchaser

17. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that the sale conducted under section 363(b) was later reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. § 363(m). *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) ... provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc*., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

Transfer taxes

18. Section 1146(a) of the Bankruptcy Code expressly exempts sales and transfers made under a plan of reorganization from stamp taxes and other applicable transfer taxes. Specifically, section 1146(a) provides that "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(a).

19. The United States Court of Appeals for the Second Circuit has construed section 1146(a) to include transfers that are authorized outside a chapter 11 plan of reorganization, provided that such sales and transfers enable the confirmation or consummation of a chapter 11 plan. *See City of New York v. Jacoby-Bender, Inc. (In re Jacoby-Bender, Inc.),* 758 F.2d 840, 842 (2d Cir. 1985) (allowing the transfer by the debtor of a deed to a building free of local transfer taxes, notwithstanding that the transfer was authorized by the bankruptcy court separate from the debtor's plan of reorganization, because the transfer was "necessary to the consummation of a plan"); *see also In re Beulah Church of God in Christ Jesus, Inc.,* 316 B.R. 41, 51 (Bankr. S.D.N.Y. 2004) (the court noted that "it is reasonable to conclude that Congress did not intend to impose an arbitrary and illogical temporal distinction on sales necessary or integral to a chapter 11 plan" and

allowed the sale of real estate free of transfer taxes notwithstanding that the sale was approved before confirmation of a plan of reorganization); *In re Permar Provisions, Inc.*, 79 B.R. 530, 534 (Bankr. E.D.N.Y. 1987) (allowing the sale of real property free of transfer taxes prior to confirmation of a plan because "absent the sale of the real property, in all probability, the plan would not have been confirmed"); The Debtor has filed her proposed chapter 11 plan. It is clear that the sale of the Property is necessary to the confirmation of this plan. Indeed, the sale of the Property will provide the funds needed to pay secured, unsecured and administrative creditors in full. The Sale may also provide a distribution to the Debtor. As such, under applicable precedent, the sale of the Property is "under a plan" as that term is used in section 1146(a) of the Bankruptcy Code and the Court should find that the sale of the Property is exempt from all stamp taxes or similar taxes pursuant to section 1146(a) of the Bankruptcy Code.

The Court Should Waive or Reduce the Periods Required By
<u>Rule 6004(h) of the Federal Rules of Bankruptcy Procedure</u>

20. Pursuant to Rule 6004(h) (formerly Rule 6004(g)) of the Bankruptcy Rules, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 10 days after entry of the order, unless the court orders otherwise. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

21. Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay period, Collier suggests that the 10-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY§ 6004.09 (Lawrence P. King, et al. eds, 15th ed. rev. rel. 2003). Furthermore,

Collier states that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal.  Id.

22. To preserve the value of the Debtor's estate and limit the costs of administering this estate, it is critical that the Debtor close on the sale as soon as possible after all closing conditions have been met or waived.  Accordingly, the Debtor hereby requests that the Court waive the 10-day stay period under Bankruptcy Rules 6004(h), or in the alternative, if an objection to the sale of the Property is filed, reduce the stay period to the minimum amount of time reasonably required by the objecting party to file its appeal.

### Notice

23. Notice of this Motion shall be provided to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) the Debtor's secured creditors, and (iii) all parties that filed a notice of appearance in this case.  The Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests entry of an order authorizing the relief requested herein and such other and further relief as this Court deems just and proper

Dated: New York, New York
       September 11, 2020

                                              **WHITE & WOLNERMAN, PLLC**

                                              By: /s/ Randolph E. White
                                                   Randolph E. White
                                                   David Y. Wolnerman
                                                   950 Third Ave., 11th Floor
                                                   New York, New York 10022
                                                   Phone: (212) 308-0667
                                                   *Attorneys for Debtor and*
                                                   *Debtor-in-Possession*