Residential Contract of Sale 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association*

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

# Residential Contract of Sale

*Contract of Sale* made as of ~~August~~ Sept. 9, 2020    **BETWEEN**

Cecilia Kempton
Address: 28 Jagger Lane, Westhampton, NY 11977
Social Security Number/Fed. I.D. No.(s):                       hereinafter called "Seller" and
Yuri Shkuro
Address: 1199 Sheepshead Bay Rd, Brooklyn NY, 11235
    Social Security Number/Fed. I.D. No.(s):                   hereinafter called "Purchaser"

## The parties hereby agree as follows:

**1. Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address: 28 Jagger Lane, Westhampton, NY
Tax Map Designation: 473689 369.000-0003-028.004

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2. Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in-microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (*strike out inapplicable items*).

Excluded from this sale are furniture and household furnishings and

**3. Purchase Price.** The purchase price is $2,495,000.00 payable as follows:

(a) On the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
$249,500.00

(b) By allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:    $

(c) By a purchase money note and mortgage from Purchaser to Seller:
$

(d) Balance at Closing in accordance with paragraph 7:
$2,245,500.00

**4. Existing Mortgage.** (*Delete if inapplicable*) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of        percent per annum, in monthly installments of $       which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on

(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the

payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more that 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more then 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

**5. Purchase Money Mortgage.** (*Delete if inapplicable*) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:

(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $     for its preparation.

(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than     percent per annum and the total debt service thereunder shall not be greater than $     per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess is to be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

**6. Downpayment in Escrow.**

(a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at: Chase Bank address

until Closing or sooner termination of this contract shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) non interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advise of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

**7. Acceptable Funds.** All money payable under this contract unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00

DocuSign Envelope ID: 1F79C3C3-B9B0-4C07-AA31-A0E5A23C6C31
DocuSign Envelope ID: 2FF57DA8-A44C-452C-93CC-594B1867215E

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser.

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 1,000.00 ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

**8. Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable. For explanation, see:* NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE.)

(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 30 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ 1,996,000.00 for a term of at least 30 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met;  however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state, foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.**
(a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.
(b) *(Delete if inapplicable)* All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

**11. Seller's Representations.**
(a) Seller represents and warrants to Purchaser that:
  I. The Premises abut or have a right of access to a public road;
  II. Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
  III. Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");
  IV. The Premises are not affected by any exemptions or abatements of taxes; and
  V. Seller has been known by no other name for the past ten years, except:

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical conditions, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as Title Co. licenced in New York State shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for this contract.

**14. Closing, Deed and Title.**
(a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a bargain and sale deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.
(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of 10/15/20 Seller's attorney at 10:00 a.m. o'clock on or about ~~September 30,~~ 2020 or upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a two family dwelling at the date of Closing.
(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.
(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.
(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment, and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.
(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.
(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.**
(a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.
(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business dates after Closing, provided the official bills therefor computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. Title Examination; Seller's Inability to Convey; Limitations of Liability.**
(a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.
(b) (i) If at the date of Closing, Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.
(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.**
(a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be

impossible to ascertain and the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.
(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either:
(a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or
(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant in this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any Notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or
(c) with respect to paragraph 7(b) or paragraph 20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than **Elegran Real Estate and Brown Harris Stevens and Scala Properties** ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorney's fees arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur the termination of this contract.

**28. Miscellaneous.**
(a) All prior understanding, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.
(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.
(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.
(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this or any provisions hereof.
(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.
(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.
(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.
(h) This contract is intended for the exclusive benefit of the parties hereto and except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by any other person or entity.
(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Continued on Rider attached hereto. *(Delete if inapplicable)*

*In Witness Whereof*, this contract has been duly executed by the parties hereto.

_Cecilia Kempton_ — **Seller**

_Yuri Shkuro_ — **Purchaser**

_____ **Seller**

_____ **Purchaser**

**Attorney for Seller:** Gold gnb Law PLLC
Ad d ress 5 West 37th Street, 12th Floor
New York, NY 10018
Tel.: 631-553-2532  Fax:

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

**Attorney for Purchaser:** John M. Giord aro, P.C.
Ad d ress: 111 Broadway, Suite 2002
New York, New York 10006
Tel.: 212-953-0551  Fax:

_____ **Escrowee**

## *Contract of Sale*

**TITLE NO.**

_____

**TO**

**PREMISES**

Sheet
Section
Block
Lot
Plate
County or Town
Street Number

---

## NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
### for
### RESIDENTIAL CONTRACT OF SALE

1. **WARNING:** The mortgage Commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sale of residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage Commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of Closing in the contract and request that the expiration date of the Commitment occur after the scheduled dated of Closing. Purchaser must comply with deadlines and pursue the application in good faith. The Commitment contingency is satisfied by issuance of a Commitment in the amount specified on or before the Commitment Date, unless the Commitment is conditioned on approval of an appraisal. If the Commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the Commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.

4. This clause assumes that initial review and approval of Purchaser's credit will occur before the Commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the Commitment.

5. If, as has been common, the Commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a Commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those Commitment conditions, including forfeiture of the Downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting Purchaser may not recover any part of the Downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6. Purchaser may submit an application to registered Mortgage Broker instead of applying directly to an Institutional Lender.

7. This clause allows Seller to cancel if a Commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the Commitment, to allow Seller the option to avoid having to wait until the scheduled date of Closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the Downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8. Purchaser may want to add to paragraph 21(c) that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale (alternative: If Seller is unable to transfer title under the contract of sale).

9-25-00
Joint Committee on the Mortgage Contingency Clause:
Real Property Section of the New York State Bar Association
Real Property Law Committee of the Association of the Bar of the City of New York
Real Property Committee of the New York County Lawyers Association

RIDER TO CONTRACT OF SALE DATED ~~AUGUST~~ September 8, 2020
BETWEEN CECILIA KEMPTON, AS SELLER,
AND YURI SHKURO, AS PURCHASER

In the event any provision of this Rider is in conflict or inconsistent with any other clause or provision in the printed portion of this Contract, then the terms of this Rider shall prevail.

1. Supplementing Paragraph "9" of the printed form of the Contract, the Premises are sold subject to the following:

    (a) Any state of facts an accurate survey would show.

    (b) Party wall agreements, easements, beam rights, reservations, declarations and terms, covenants, provisions and restrictions contained in agreements of record, if any, so far as the same may be of present force or effect, provided that the same do not bar present use of said Premises and do not prohibit the maintenance and operation of the present structure thereon and do not render title unmarketable or uninsurable;

    (c) Intentionally Omitted.

    (d) Possible encroachment of retaining walls, cellar doors, fences and fire escapes, if any, an any variations between the record line with any fence, hedge, driveway, wall or the like surrounding the Premises;

    (e) Sewer, water, electric, gas, telephone and other public utility covenants or easements now or hereafter recorded and the possible rights of third parties, such as cable television companies, in and to utility easements.

    (f) Designation of the Premises as a historical landmark or being with a landmark district;

    (g) Any other matter subject to which Purchaser agrees to accept title under any other provision of this Contract.

2. Any and all of the "subject" provisions contained in this Contract may be omitted by Seller in the deed to be delivered hereunder, but all such provisions so omitted shall survive delivery of such deed.

3. Delivery to and acceptance of the deed by the Purchaser shall be deemed and considered as full compliance by the Seller of all the terms of this Contract, and as a release by the Purchaser of any and all rights, obligations, claims, or causes of action against the Seller. None of the terms of this Contract, except those which this Contract expressly states shall survive such delivery, or any promise, representation, agreement or obligation on the part of the Seller, shall survive the delivery and acceptance of the deed, unless such promise, representation, agreement or obligation expressed or implied is fully set forth in writing, and signed by the Seller and Purchaser and unless such writing expressly states that the same shall survive the delivery and acceptance of the deed.

4. The Purchaser shall in no event take possession of the Premises prior to the time of delivery of the deed nor may any personal property of any nature or description be placed on the Premises before taking title unless otherwise agreed in writing between the parties.

5. In the event that a check given as downpayment is dishonored for any reason by the bank upon which it is drawn, Seller, in addition to any other rights or remedies that they may have, may terminate this Contract and Seller shall be relieved and released from all obligations hereunder.

6. Supplementing Paragraph 7 of the printed form of the Contract, the payment due at closing is to be made by good unendorsed official bank check payable directly to the order of Seller or Seller's designee and drawn on a bank which is a member of the New York Clearinghouse. Uncertified checks of a funding company or attorney's escrow account will not be accepted by Seller on account of proceeds due from Purchaser.

7. Purchaser represents to Seller that there are no outstanding judgments or tax liens against Purchaser and no bankruptcy or other insolvency proceedings have been commenced against Purchaser, or filed by Purchaser as debtor.

8. This Contract is not to be deemed an offer unless same is fully executed and delivered by Seller and Purchaser and fully executed copies are exchanged by the parties hereto.

9 This Contract or a short form memorandum of the same shall not be recorded by the Purchaser.

10. This Contract constitutes the entire agreement between the parties hereto and may not be modified except by an instrument in writing signed by the parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

11. Supplementing Paragraph 21 (b), if Seller shall be unable to convey title subject to and in accordance with the terms of this Contract, the sole obligation of Seller shall be to refund Purchaser's down payment made hereunder together with the net cost of the title examination ordered by Purchaser, and upon making such refund this Contract shall wholly cease and terminate and neither party shall have any further claims against the other by reason of this contract, and the lien, if any, of the Purchaser against the Premises, shall wholly cease. Seller shall not be required to bring any action or proceeding or otherwise incur any expense to remove Defects or render title to the Premises marketable or insurable in accordance with the terms of this Contract. Purchaser may nevertheless accept such title as Seller may be able to convey, without reduction of the purchase price, and without any credit or allowance against the same, and without any liability on the part of Seller.

12. Purchaser acknowledges that they are not relying upon any warranty, representation, statement or other assertion regarding the condition of the Premises, and that Purchaser is relying upon their independent examination of the Premises. In this regard,

DocuSign Envelope ID: 2FF57DA8-A44C-452C-93CC-594B1867215E

Purchaser acknowledges that they are acquiring the Premises "AS IS". No warrantees of any kind are implied in this transaction. Specifically, Seller makes no express or implied warranties with respect to the physical condition of the Premises. Further, Seller has not made, does not make, and specifically disclaims any representations regarding compliance with any environment protection, pollution or land use laws, rules, regulations, orders or other governmental requirements. Seller is not liable or bound in any manner by any verbal or written statement representations or information pertaining to the Premises furnished by any real estate broker. Purchaser further acknowledges and agrees that having been given the opportunity to inspect the physical condition of the Premises, Purchaser is relying solely on its own investigation of the Premises and not on any information provided or to be provided by Seller.

13. Title to any personal property included in this sale shall pass to the Purchaser upon delivery of the deed, however, no part of the purchase price shall be deemed to have been paid for same.

14. The respective attorneys for the parties are hereby authorized (a) to give and receive any notice which the party is required to give or may give under this contract of sale; (b) to agree to adjournments of closing of title or agree to extensions of the time periods as provided herein; and (c) to initial any changes in this contract after execution by the parties.

15. All notices under this contract of sale shall be in writing and shall be delivered personally, or shall be sent by express overnight mail, addressed to the attorneys for the respective parties at their addresses set forth on the printed portion of this Contract, and shall be deemed served on the date of receipt. Notwithstanding the foregoing, all notices (except notices of an event of default) may be delivered via e-mail.

16. Purchaser acknowledges that on December 6, 2019 Seller filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, currently pending under Case No. 19-78292, in the bankruptcy court for the Eastern District of New York. All of the obligations of Seller under this Agreement are subject to and conditioned upon the Bankruptcy Court having entered an order (the "Sale Order") approving the execution of this Agreement by Seller and of the consummation by Seller of the transactions contemplated herein, and the parties shall use reasonable efforts to cause the order not to be subject to Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure. It shall be an additional condition precedent to Closing that the Sale Order of the Bankruptcy Court shall have been entered on the docket by the Clerk of the Bankruptcy Court and shall have become a final order.

[SIGNATURE PAGE FOLLOWS]

DocuSign Envelope ID: 2FF57DA8-A44C-452C-93CC-594B1867215E

SELLER:                                    PURCHASER:

*[signature]*                              DocuSigned by:
                                           *Yuri Shkuro*
                                           E743FAE06CF8422...

## PURCHASER'S RIDER TO CONTRACT OF SALE ("CONTRACT")
## FOR 28 JAGGER LANE, WESTHAMPTON, NEW YORK

This Purchaser's Rider is executed simultaneously with the printed form Contract of Sale (the "Contract") to which it is annexed. If the provisions of this Purchaser's Rider conflict in any way with the provisions of the printed form Contract and/or any other Rider to the Contract (herein referred to as "Seller's Rider(s)") the provisions of this Purchaser's Rider shall control and prevail.

1. Supplementing Paragraph 2 of the Contract to provide that Seller shall be responsible to repair any material damage caused by the removal of any items of personal property or fixtures and restore the walls, floors and/or ceilings (as the case may be) to a uniform condition and appearance. Markings on walls and screw holes of a minor nature from picture frames or other personalty shall not be considered damage pursuant to this paragraph Should Seller remove any lighting fixture(s) as provided for in the contract, then Seller shall replace the removed fixtures with standard builder's fixtures.

2. Supplementing and/or amending Paragraphs 9 of the Contract as follows:

   2.1 As to subsection (a): and further provided that said facts do not render title uninsurable (without the payment of any additional premium)

   2.2 As to subsection (e) Purchaser agrees to take title subject to covenants, restrictions, easements, reservations, conditions, consents and agreements of record, if any, **only if**, they (1) are not violated by the present structures and improvements on the Premises and the present use and occupancy thereof, (2) do not create any monetary obligation on the Purchaser (3) do not render title uninsurable, (4) will not result in a forfeiture or reversion of title, or (v) will not prevent the current use of the Premises.

   2.3 As to subsections (c): To insert the word "minor" before the word "encroachments".

   2.4 As to all subject to provisions contained in the contract, provided they do not render title unmarketable or uninsurable and further provided that any such title insurance the Purchaser secures shall be without additional or special premium cost to Purchaser.

3. Paragraph 11(a) of the Contract is modified by the addition of the following:

   VI. To the best of Seller's knowledge, at no time has the Premises been used for the generation, storage or disposal of hazardous materials or as a landfill or other waste disposal site.

VII. There are no actions, suits, or proceedings and, to the best of Seller's knowledge, claims relating to a violation or non-compliance with any environmental law or with respect to the disposal, discharge or release of hazardous materials at or from the Premises.

VIII. Seller has received no written notice of any pending or threatened condemnation or eminent domain proceedings that would affect the Premises.

IX. Seller has no knowledge of any current or pending actions or administrative proceedings that affects the Premises.

X. There are no agreements, consent orders, decrees, judgments, licenses or permit-conditions, or other directives, issued by a municipal department or agency or otherwise which relate to the future use of the Premises or require any change in the present condition of the Premises, and there have been no alterations, improvements or changes to the Premises or improvements which would require a new certificate of occupancy or amended certificate.

XI. The electrical, plumbing, air conditioning, heating and other mechanical systems servicing the Premises and all appliances (including but not limited to the range, refrigerator, gas stove, dishwasher and garbage disposal), are now, and will at Closing be in working order and condition, and the roof, of the Premises will be free of leaks.

XII. All alterations or additions made to the Premises were made in compliance with laws, rules and regulations promulgated by all governmental and/or municipal authorities having jurisdiction over the Premises.

XIII. As of the date of this Contract, Seller has not received written notice of any violations affecting the Premises from any governmental agency or any notice to repair sidewalks. Any assessments received for sidewalk work noticed prior to Closing shall remain Seller's responsibility after the Closing.

XIV. The Premises is in conformity with the Certificate of Occupancy and/or Certificates of Completion and Compliance and Seller represents and warrants that the Premises may be legally occupied and used as a **two (2)** family dwelling.

XV. Intentionally Deleted.

XVI. Seller is not a party subject to the withholding requirements of Section 1445 of the Internal Revenue Code or to any other Federal or State withholding requirements.

XVII.   Intentionally Deleted.

4.  Supplementing and/or modifying Paragraph 16 of Contract to provide as to item (d) that the entire Premises (including but not limited to the attic, basement and front, side and rear yards) shall be delivered vacant at the time of Closing.

5.  The Delivery to Seller's attorney of a Report of Title and any continuations thereof shall be deemed to be notice to Seller of any objections to title noted in the Report.

6.  Sellers shall provide Purchasers with access to the Premises for an inspection within 48 hours of the scheduled closing date. At the time of such inspection, all utilities serving the Premises will be operational. In addition, on two occasions, between the dates of contract and closing, Purchaser shall be given access to the Premises for the purposes of having Purchasers' engineers, contractors, or architects take measurements or inspect the Premises.

7.  In the event of the death of either one or any the persons constituting Purchaser, then either the nominee, executor or administrator of the estate of the deceased Purchaser or the surviving Purchaser, as the case may be, shall have the right to terminate this Contract, provided written notice of termination is sent within fifteen (15) days after the occurrence of such death. In the event of the exercise of this right of termination, Escrowee shall return the Down payment to said executor or administrator or the surviving Purchaser as the case may be. Upon such refund being made, this Contract shall be null and void and of no further force and effect and all rights, obligations and liabilities hereunder shall end.

8.  Intentionally Deleted.

9.  Any time periods contained in this Contract which contain the language "from the date hereof" or "the date of contract" or similar effect shall be deemed to mean from the date that a fully executed counterpart of this Contract is delivered to the office of Purchasers' attorney.

10. The Contract and all Riders may be executed in more than one counterpart, each of which, when taken together, shall be deemed to be one (1) instrument. The Contract and this Rider may be executed and delivered by facsimile transmission or by email via .pdf format, in each case, with the same force and effect as originals.

11. Purchaser shall have the right to assign this Contract to an LLC in which Purchaser is the sole member at or prior to closing.

12. The closing may occur in escrow through the Purchaser's title company.

13. Seller shall close the underground oil tank on the Premises and produce a certificate of abandonment or like certificate prior to or at Closing. At Seller's option, prior to Closing, Seller shall install an above ground 110 gallon oil tank at

3

DocuSign Envelope ID: 2FF57DA8-A44C-452C-93CC-594B1867215E

the Premises solely for the purpose of heating water or connect the existing propane gas tank to the hot water heater.

14. Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing

SELLER: *[signature]*

PURCHASER: *[DocuSigned by: Yuri Shkuro]*

4