**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:

CECILIA B. KEMPTON,

                      Debtor.
-----------------------------------------------------------x

Chapter 11

Case No. 19-78292 (AST)

---

## DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

**WHITE & WOLNERMAN, PLLC**
Attorneys for the Debtor
950 Third Ave., 11th Floor
New York, New York 10022
(212) 308-0667
Randolph E. White
David Y. Wolnerman

Dated:  As of November 12, 2020

# TABLE OF CONTENTS

Page

ARTICLE I.   RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS....................................................1

    A.   Rules of Interpretation, Computation of Time and Governing Law.......................1
    B.   Defined Terms ...............................................................................................1

ARTICLE II.   ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ......................6

    A.   Administrative Claims ......................................................................................6
    B.   Priority Tax Claims...........................................................................................7
    C.   Fees Payable to the United States Trustee .............................................................7

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS ...............7

    A.   Administrative Claims and Priority Tax Claims......................................................7
    B.   Summary ........................................................................................................7
    C.   Classification and Treatment of Claims and Interests. ...........................................8
    D.   Special Provision Governing Unimpaired Claims................................................10

ARTICLE IV.  ACCEPTANCE OR REJECTION OF THE PLAN ...........................................10

    A.   Presumed Acceptance of Plan.............................................................................10
    B.   Voting Classes ...............................................................................................10

ARTICLE V.  MEANS FOR IMPLEMENTATION OF THE PLAN........................................11

    A.   Source of Funds .............................................................................................11

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................................................................11

    A.   Assumption and Rejection of Executory Contracts and Unexpired Leases...............................................................................................................11
    B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases...............................................................................................................12
    C.   Modifications, Amendments, Restatements or Other Agreements.......................12
    D.   Reservation of Rights.......................................................................................12

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS.............................................13

    A.   Distributions for Allowed Claims.......................................................................13
    B.   Distributions on Account of Claims Allowed After the Effective Date ....................................................................................................................13

C.      Delivery and Distributions and Undeliverable or Unclaimed
        Distributions...................................................................................................14
D.      Compliance with Tax Requirements/Allocations ..................................................15
E.      Timing and Calculation of Amounts to Be Distributed ........................................15
F.      Setoffs ...................................................................................................................15

ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
              UNLIQUIDATED CLAIMS OR INTERESTS ...................................................16

A.      Resolution of Disputed Claims .............................................................................16
B.      Claims Allowance .................................................................................................17
C.      Controversy Concerning Impairment ....................................................................17
D.      Disallowance of Claims ........................................................................................17
E.      Amendments to Claims ..........................................................................................18

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND
            CONSUMMATION OF THE PLAN ....................................................................18

A.      Conditions Precedent to Confirmation...................................................................18
B.      Conditions Precedent to Consummation and Occurrence of
        Effective Date .......................................................................................................18
C.      Waiver of Conditions.............................................................................................19
D.      Effect of Non-Occurrence of Conditions to Consummation .................................19

ARTICLE X.   SETTLEMENT, INJUNCTION AND RELATED PROVISIONS......................19

A.      Compromise and Settlement ..................................................................................19
B.      Exculpation ...........................................................................................................20
C.      Preservation of Rights of Action / Reservation of Rights......................................20
D.      Preservation of Insurance......................................................................................22
E.      Injunction ..............................................................................................................22

ARTICLE XI. RETENTION OF JURISDICTION.......................................................................23

ARTICLE XII. MISCELLANEOUS PROVISIONS ....................................................................24

A.      Payment of Statutory Fees ....................................................................................24
B.      Quarterly Reports..................................................................................................24
C.      Modification of Plan ..............................................................................................24
D.      Revocation of Plan ................................................................................................25
E.      Successors and Assigns.........................................................................................25
F.      Reservation of Rights ............................................................................................25
G.      Further Assurances................................................................................................25
H.      Severability ...........................................................................................................25
I.      Service of Documents ...........................................................................................26

## DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Cecilia B. Kempton (the "Debtor"), the above-captioned debtor, hereby respectfully proposes the following plan of reorganization under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

A.    Rules of Interpretation, Computation of Time and Governing Law

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Bankruptcy Code §102 shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

3.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease instrument, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "Accrued Professional Compensation" means, at any particular time, all accrued, contingent and/or unpaid fees and expenses (including Allowed Fee Claims) for legal, financial, advisory, accounting, real estate brokerage, and other services and reimbursement of expenses that are awardable and allowable under Bankruptcy Code §§328, 330(a) or 331 or otherwise rendered prior to the Confirmation Date by any Retained Professional in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Retained Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.    "Administrative Claim" means any Claim for costs and expenses of administration of the Estate under Bankruptcy Code §§503(b), 507(b) or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) Fee Claims; (c) all fees and charges, and any applicable interest, assessed against the Estate under chapter 123 of Title 28 of the United States Code, 28 U.S.C. §§1911-30; and (d) Claims arising under Bankruptcy Code §503(b)(9).

3.    "Allowed" means with respect to Claims: (a) any Claim proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Bankruptcy Code or Final Order of the Bankruptcy Court a Proof of Claim is or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim (i) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (ii) regardless of whether such an objection is so interposed, the Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to or action, approval or order of the Bankruptcy Court

4.    "Bankruptcy Code" means title 11, United States Code, as applicable to the Chapter 11 Case.

5.    "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under 28 U.S.C. §157 and/or the order of the United States District Court for the Eastern District of New York.

6.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court.

7.    "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined by Bankruptcy Rule 9006(a)).

8.      "Cash" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents.

9.      "Causes of Action" means: (a) all any and all avoidance, recovery, subordination or other actions or remedies that may be brought or have already been commenced as of the Confirmation Date on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Bankruptcy Code §§510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553(b) and 724(a); and (b) all actions claims, rights, suits, remedies, counterclaims, crossclaims, indemnity claims, contribution claims or defenses that the Debtor or her Estate may have.

10.     "Chapter 11 Case" means the chapter 11 case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, Case No. 19-78292 (AST).

11.     "Claim" means any claim against the Debtor as defined in Bankruptcy Code §101(5).

12.     "Claims Bar Date" means, as applicable, (a) the General Bar Date, (b) the Government Claims Bar Date, (c) the General Administrative Claims Bar Date, or (d) such other period of limitation as may be fixed by an order of the Bankruptcy Court for filing such Claims.

13.     "Claims Objection Bar Date" means, as applicable: (a) 180 days after the Effective Date; or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court or the relevant parties for objecting to any Claims.

14.     "Class" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code §1122(a).

15.     "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in this Plan having been (a) satisfied, or (b) waived pursuant to the terms of this Plan.

16.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

17.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to Bankruptcy Code §1129, as such hearing may be continued from time to time.

18.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code §1129.

19.     "Consummation" means the occurrence of the Effective Date.

20.     "Debtor" means Cecilia B. Kempton, as debtor in the Chapter 11 Case.

21.     "Disclosure Statement" means the disclosure statement for this Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

22.     "Disputed Claim" means, with respect to any Claim, any Claim that is not yet Allowed.

23.     "Effective Date" means the day that is the first Business Day after the conditions specified in Article IX.B of the Plan have been satisfied, or waived.

24.     "Entity" means an entity as defined in Bankruptcy Code §101(15), including Persons.

25.     "Estate" means the estate created for the Debtor in its Chapter 11 Case pursuant to Bankruptcy Code §541.

26.     "Executory Contract" means a contract to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code §§365 or 1123.

27.     "Fee Claim" means a Claim under Bankruptcy Code §§328, 330(a), 331, 363 or 503 for accrued professional compensation, including claims for compensation by a Retained Professional.

28.     "File" or "Filed" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

29.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or otherwise been dismissed with prejudice.

30.     "General Administrative Claim" means any Administrative Claim that is not a Fee Claim.

31.     "General Bar Date" means February 17, 2020, pursuant to Order of the Bankruptcy Court.

32.     "General Unsecured Claim" means any unsecured Claim against the Debtor, which is not a Priority Tax Claim, General Administrative Claim, Fee Claim or Other Priority Claim.

33.     "Government Claims Bar Date" means June 3, 2020, pursuant to Order of the Bankruptcy Court.

34.     "Holder" means an Entity or Person holding a Claim.

35.     "Impaired" means, with respect to a class of claims, a Claim that is impaired within the meaning of Bankruptcy Code §1124.

36.     "Impaired Class" means an impaired Class within the meaning of Bankruptcy Code §1124.

37.     "Interests" means all of the Debtor's interests in property of the Estate.

38.     "Jagger Lane Property" means the property located at 28 Jagger Lane, Westhampton, New York 11977.

"MLF3" means MLF3 Jagger LLC.

39.     "Other Priority Claim" means any Claim accorded priority in right of payment under Bankruptcy Code §507(a), other than a Priority Tax Claim or an Administrative Claim.

40.     "Other Secured Claim" means a claim that is a lien on property of the Debtor that is not a Mortgagee Claim.

41.     "Person" means a person as defined in Bankruptcy Code §101(41).

42.     "Petition Date" means December 6, 2019, the date on which the Debtor commenced the Chapter 11 Case.

43.     "Plan" means this plan of reorganization, as amended, supplemented or modified from time to time, and including all exhibits, which are incorporated herein by reference.

44.     "Post-Confirmation Debtor" means the Debtor after the Confirmation Date.

45.     "Priority Tax Claim" means any Claim of a governmental unit of the kind specified in Bankruptcy Code §507(a)(8).

46.     "Proof of Claim" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

47.     "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

48.     "Retained Professional" means any Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with Bankruptcy Code §§327, 328 and 1103 and to be compensated for services rendered prior to the Effective Date, pursuant to Bankruptcy Code §§327, 328, 329, 330, 331 or 363, including without limitation the Debtor's attorneys and accountants; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code §503(b)(4).

49.     "Sale Order" means an Order of the Bankruptcy Court authorizing and/or approving the sale of the Jagger Lane Property.

50.     "Secured Jagger Lane Claims" means the Claims secured by the Debtor's interest in Jagger Lane Property.

51.     "Secured St. James Claims" means the Claims secured by the Debtor's interest in the property located at 256 St. James Avenue, St. Simons, GA 31522.

52.     "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to Bankruptcy Code §521, as the same may have been amended, modified or supplemented from time to time.

53.     "St. James Property" means the property located at 256 St. James Ave., St. Simmons Island, Georgia 31522.

54.     "Unclaimed Property" means any distribution of Cash, and other property, unclaimed after the Effective Date, or the date upon which a distribution would have been made in respect of the relevant Allowed Claim. Unclaimed Property shall include: (a) checks (and the funds represented thereby) and other property mailed to a Holder of an Allowed Claim and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; (c) checks (and the funds represented thereby) not mailed, or undeliverable in accordance with the Plan; and (d) distributions rejected by a Holder of a Claim

55.     "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code §§365 or 1123.

56.     "Unimpaired" means, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of Bankruptcy Code §1124.

57.     "Voting Deadline" means the date and time by which all ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, must be actually received by the Debtor, as established by Order of the Bankruptcy Court.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.     Administrative Claims

1.     <u>General Administrative Claims</u>

Except as otherwise provided herein and subject to Bankruptcy Code §§328, 330(a) and 331, each Holder of an Allowed General Administrative Claim will be paid the full amount of such Allowed Claim in Cash: (a) on or as soon as reasonably practicable after the Effective Date; (b) if

such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; (c) upon such other terms as may be agreed upon by such Holder and the Debtor; or (d) as otherwise ordered by the Bankruptcy Court.

      2.    <u>Fee Claims</u>

Retained Professionals, including without limitation other entities asserting a Fee Claim for services rendered before the Confirmation Date, must File and serve on the Debtor, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules or any order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than sixty (60) days after the Confirmation Date.  Objections to any Fee Claim must be Filed and served on the Debtor, the United States Trustee, and the requesting party in accordance with the notice of the hearing on such Fee Claim.

B.      Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor and such Holder; <u>provided</u>, <u>however</u>, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five (5) years after the Petition Date, pursuant to Bankruptcy Code §1129(a)(9)(C).

C.      Fees Payable to the United States Trustee

The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. §3717, on all disbursements including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Order closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS

A.      Administrative Claims and Priority Tax Claims

In accordance with Bankruptcy Code §1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in this Article III.

B.      Summary

      1.    The categories of Claims listed below classify Claims for all purposes, including voting, Confirmation and distributions pursuant hereto and pursuant to Bankruptcy Code §§1122 and 1123(a)(1).  The Plan deems a Claim to be classified in a particular Class only to the extent

that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim or an Equity Interest is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

2.      Summary of Classification and Treatment of Classified Allowed Claims Against the Debtor:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority (Non-Tax) Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Jagger Lane Claims | Unimpaired | Deemed to Accept |
| 3 | Secured St. James Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 5 | Interests | Unimpaired | Deemed to Accept |

C.      Classification and Treatment of Claims and Interests.

The classification and treatment of Claims and Interests pursuant to the Plan, is as follows.

Class 1 - Priority (Non-Tax) Claims

(i)      Classification: Class 1 consists of all Holders of Priority Claims against the Debtor which are not tax claims.

(ii)     Treatment: The legal, equitable and contractual rights of the Holders of Allowed Class 1 Claims are unaltered.  Unless otherwise agreed to by Holders of Allowed Class 1 Claims and the Debtor, each Holder of an Allowed Class 1 Claim shall receive, in full and final satisfaction of such Allowed Class 1 Claim, payment of the Allowed Class 1 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date.

(iii)    Voting: Class 1 is Unimpaired, and Holders of Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 1 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan, including Article VIII hereof.

Class 2 – Secured Jagger Lane Claims

(i)      Classification: Class 2 consists of the Holders of Secured Jagger Lane Claims.

      (ii)      Treatment: Unless otherwise agreed to by Holders of Allowed Class 2 Claims and the Debtor, Holders of Allowed Class 2 Claims shall receive payment in full on or soon as reasonably practicable after the Effective Date of the Plan.

      (iii)     Voting: Class 2 is Unimpaired, and Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 2 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan, including Article VIII hereof.

## Class 3 – Secured St. James Claims

      (i)      Classification: Class 3 consists of the Holders of Secured St. James Claims.

      (ii)      Treatment: Unless otherwise agreed to by Holders of Allowed Class 3 Claims and the Debtor, Holders of Allowed Class 3 Claims shall receive either (i) payment in full on or soon as reasonably practicable after the Effective Date of the Plan; or (ii) (a) the Holders of such Claims shall retain the liens securing such Claims to the extent of the Allowed amount of such Claims and (b) receive monthly cash payments in accordance with such Holder's underlying loan documents.

      (iii)     Voting: Class 3 is Unimpaired, and Holders of Class 3 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 3 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan, including Article VIII hereof.

## Class 4 – General Unsecured Claims

      (i)      Classification: Class 4 consists of all non-insider Holders of General Unsecured Claims held against the Debtor.

      (ii)      Treatment: Unless otherwise agreed to by Holders of Allowed Class 4 Claims and the Debtor, each Holder of Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, and discharge and in exchange for each Allowed General Unsecured Claim, payment, in full in Cash on or as soon as reasonably practicable after the Effective Date from the proceeds of sale of the Jagger Lane Property.  In the event that such proceeds are insufficient to pay each Holder of Allowed

General Unsecured Claims in full in Cash on or as soon as reasonably practicable after the Effective Date, each Holder of Allowed General Unsecured Claims will also receive a lien on the St. James Property, subordinate to the Holders of Secured St. James Claims, to the fullest extent permitted under applicable law.

(iii)    Voting: Class 4 is Unimpaired, and Holders of Class 4 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 4 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan, including Article VIII hereof.

Class 5 – Interests in Property of the Estate

(i)    Classification: Class 5 consists of all of the Debtor's Interests in property of the Estate.

(ii)    Treatment: The Plan provides for the payment in full of all claims.  Accordingly, the Debtor shall retain her assets subject to the right of each Class of creditors to be paid as provided under the Plan.

(iii)    Voting: Class 5 is Unimpaired, and the Holder of Class 5 Interests is not entitled to vote to accept or reject the Plan.

D.    Special Provision Governing Unimpaired Claims

Except as otherwise provided herein, nothing in the Plan shall affect the Debtor's rights with respect to any Unimpaired Claims, including all rights with respect to legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.    Presumed Acceptance of Plan

Classes 1-5 are Unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).

B.    Voting Classes

No Class is Impaired under the Plan and, therefore, no Holders of Claims as of the Record Date shall be entitled to vote to accept or reject the Plan.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    Source of Funds

The payments due under the Plan will be paid from the proceeds of the sale of the Debtor's interest in the Jagger Lane Property.  The Debtor proposes to sell the Property pursuant to a three-step sale process.  First, the Jagger Lane Property has been marketed by the Debtor's Court-appointed Brokers.  In this regard, the Debtor has received an offer to purchase the Jagger Lane Property for $2.495 million (the "Private Sale").  If a closing in connection with this sale does not occur on or before December 31, 2020, the Debtor's option to close on the related asset purchase agreement shall expire.

In the event such closing does not occur on or prior to November 30, 2020, the Jagger Lane Property shall be listed for sale with a reputable auctioneer with appropriate bankruptcy experience (*provided, however,* that the Debtor may close on the Private Sale APA until the earlier of such time as the Private Sale APA has been terminated by its terms or December 31, 2020).  In this event, the Debtor will file an application seeking the retention of such auctioneer by December 7, 2020.  An auction will then be scheduled for on or before March 18, 2021 and the Jagger Lane Property sold to the highest and best offer, with a closing to occur on or before May 1, 2021.

In the event a closing on the sale of the Jagger Lane Property has not occurred on or before May 1, 2021, MLF3 shall be permitted to proceed with a sale process for the Jagger Lane Property pursuant to 11 U.S.C. § 363.  Creditors holding Claims secured by the Jagger Lane Property, at their sole and absolute discretion, shall have the right to credit bid up to and including the full amount of such secured Claim at any public sale thereof.

It is currently anticipated that the proceeds of sale of the Jagger Lane Property will be sufficient to pay all Allowed Administrative Expense Claims and all Allowed Class 1, 2 and 4 Claims in full, with the repayment over time of Allowed Class 3 Claims in accordance with the respective underlying loan documents.  In the event this turns out not be the case, the Plan provides for the payment in full of all  Allowed Administrative Expenses Claims and all Allowed Class 1, 2 and 4 from a combination of the proceeds of sale of the Jagger Lane Property and the grant of subordinate liens on the St. James Property.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, and solely with regard to any such executory contracts or unexpired leases entered into by the Debtor, all Executory Contracts and Unexpired Leases shall be deemed rejected in accordance with the provisions of Bankruptcy Code §§365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory or Unexpired Lease:

(a)     has previously been assumed by the Debtor by Final Order of the Bankruptcy Court;

(b)     has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date which order becomes a Final Order after the Effective Date;

(c)     is the subject of a motion to assume or reject pending as of the Effective Date; or

(d)     is otherwise assumed pursuant to the terms herein.

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases

Notwithstanding anything to the contrary provided herein, all Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases must be Filed within the later of: (a) 30 days after the entry of an order of the Bankruptcy Court approving any such rejection; and (b) the first Business Day that is 30 days following the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely Filed will be forever barred from assertion against the Debtor, its Estate and property of the Post-Confirmation Debtor, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article X.E.

Notwithstanding anything herein to the contrary, nothing in this Plan is intended to extend the deadline by which Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases was required to be previously Filed.

C.      Modifications, Amendments, Restatements or Other Agreements

Unless otherwise provided by the Plan, each rejected Executory Contract or Unexpired Lease shall include all modifications, amendments, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interest.

Amendments, restatements or other modifications to Executory Contracts or Unexpired Leases executed by the Debtor during the pendency of the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claim arising in connection therewith.

D.      Reservation of Rights

Nothing contained in the Plan or the exhibits to the Plan shall constitute an admission by the Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that the Debtor or the Post-Confirmation Debtor has any liability thereunder. Additionally, the Debtor and Post-Confirmation Debtor reserve all of their defenses and rights with respect to any rejection damages claims filed by an Entity with respect to an Executory Contract or Unexpired Lease.

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    Distributions for Allowed Claims

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, and subject to the establishment of a disputed claims reserve, all distributions with respect to Claims that are Allowed Claims as of the Effective Date shall be made by the Post-Confirmation Debtor, or its counsel, as set forth in the Plan. The Post-Confirmation Debtor shall make distributions on the Effective Date or as soon as reasonably practicable thereafter to Holders of Allowed Administrative Claims, Fees of the type described in 28 U.S.C. § 1930(a)(6), including the fees of the United States Trustee, and any applicable interest, Allowed Fee Claims, and all Allowed Claims in Classes 1-5.  The Post-Confirmation Debtor shall make further distributions to Holders of Claims that subsequently become Allowed Claims pursuant to the Plan.

B.    Distributions on Account of Claims Allowed After the Effective Date

1.    Payments and Distributions on Disputed Claims

Notwithstanding any provision herein to the contrary, except as otherwise agreed by the Post-Confirmation Debtor, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order. On the first Business Day which is 20 calendar days after the end of the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive such payments and distributions to which that Holder is then entitled under the Plan.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.    Disputed Claims Reserves

As of and after the Effective Date with respect to Distributions to be made under the Plan, to the extent that a Claim is a Disputed Claim and if the Claim was an Allowed Claim that the Holder of the Claim would be entitled to a distribution under the Plan, the Post-Confirmation Debtor shall establish a reserve for the payment of any such Disputed Claims to the extent such Disputed Claim becomes an Allowed Claim.  The Debtor shall fund the Disputed Claims Reserve on the earlier of, or as reasonably practicable thereafter, (i) the Effective Date; and (ii) closing on the sale of the Jagger Lane Property, *provided however,* that the Debtor shall have no obligation to fund the Disputed Claims Reserve in respect of any particular creditor unless and until such creditor's claim becomes a Disputed Claim.  The amount reserved for each Disputed Claim shall be the amount that the Holder of such Disputed Claim would have been entitled to receive under the Plan it if was an Allowed Claim based upon the Claim being the lower of: (i) the amount set forth in a Proof of Claim Filed by the Holder of such Claim, or if no Proof of Claim has been Filed,

the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for Plan distribution purposes, as determined by the Bankruptcy Court.  As soon as practicable after (and to the extent) that a Disputed Claim becomes an Allowed Claim, the Post-Confirmation Debtor shall make a payment on such Allowed Claim from the reserve established for such Disputed Claim that becomes an Allowed Claim, and any remaining amount reserved on account of such Disputed Claim shall be released from the reserve and either: (i) held by the Post-Confirmation Debtor for distribution to all Holders of Allowed Claims in accordance with the Plan; or (ii) if there are no such other Holders of Allowed Claims, the remaining amount reserved on account of such Disputed Claim shall be paid to the Post-Confirmation Debtor.

C.      Delivery and Distributions and Undeliverable or Unclaimed Distributions

        1.      Delivery of Distributions in General

Except as otherwise provided herein, the Post-Confirmation Debtor shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such distribution; provided, however, that if such Holder Files a Proof of Claim, the address identified by the Proof of Claim shall be the address for such distribution, and the manner of delivery for such distributions shall be determined at the discretion of the Post-Confirmation Debtor. Nothing herein shall require or be deemed to require the Post-Confirmation Debtor to attempt to locate any Holder of an Allowed Claim.  Distributions shall be made in accordance with the provisions of the Plan and may be made in one or more payments or deliveries.

        2.      Minimum Distributions

Notwithstanding anything herein to the contrary, the Post-Confirmation Debtor shall not be required to make distributions or payments of less than $25.00.

        3.      Undeliverable Distributions and Unclaimed Property

Subject to Bankruptcy Rule 9010, and except as otherwise provided herein, distributions to Holders of Allowed Claims shall be made by the Post-Confirmation Debtor at (a) the address for each Holder of an Allowed Claim as set forth in the Schedules, unless superseded by the address set forth on the Proof of Claim filed by such Holder, or (b) the last known address for such Holder if no proof of Claim is filed, or if the Debtor or the Post-Confirmation Debtor, has been notified in writing of a change of address.

If any distribution is returned as undeliverable, the Post-Confirmation Debtor may, in its sole discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Post-Confirmation Debtor has determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest. The Post-Confirmation Debtor shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner.

Amounts in respect of any undeliverable distributions made by the Post-Confirmation Debtor shall be returned to, and held in trust by, the Post-Confirmation Debtor, until the distributions are claimed, or are deemed to be Unclaimed Property upon the expiration of six (6) months from the date of the return of the undeliverable distribution. Unclaimed Property shall be utilized by the Post-Confirmation Debtor to make additional distributions in accordance with the provisions of the Plan. After the final distribution is made under the Plan, or after all Allowed Claims (including Allowed Administrative Claims) have been paid in full, with interest, any Unclaimed Property shall revert to the Post-Confirmation Debtor.

D.       Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Post-Confirmation Debtor shall comply with all tax withholding and reporting requirements imposed upon it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Post-Confirmation Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including segregating or reserving a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding or other taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Post-Confirmation Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

E.       Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive, in one or more payments or deliveries, the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

F.       Setoffs

The Post-Confirmation Debtor may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise

resolved, the Post-Confirmation Debtor may, pursuant to Bankruptcy Code §553 or applicable non-bankruptcy law, setoff or recoup against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Post-Confirmation Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or Post-Confirmation Debtor may possess against any such Holder, except as specifically provided herein.

**ARTICLE VIII.**

**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT AND UNLIQUIDATED CLAIMS OR INTERESTS**

A.    Resolution of Disputed Claims

    1.    <u>Prosecution of Claims Objections</u>

The Debtor and Post-Confirmation Debtor shall have the exclusive authority to File objections on or before the Claims Objection Bar Date and settle, compromise, withdraw or litigate to judgment objections to any and all Claims. From and after the Effective Date, the Post-Confirmation Debtor may settle, compromise, or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party.

    2.    <u>Procedure for Omnibus Objections to Claims</u>

The Debtor or the Post-Confirmation Debtor is permitted to file omnibus objections to claims (an "Omnibus Objection") on any grounds, including, but not limited to, those grounds specified in Bankruptcy Rule 3007(d). For claims that have been transferred, a notice shall be provided only to the person or persons listed as being the owner of such claim on the Debtor's claims register as of the date the Omnibus Objection is filed. The notice shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all claims subject to the objection thereby; rather, the notice shall (i) identify the particular claim or claims filed by the claimant that are the subject of the Omnibus Objection, (ii) provide a unique, specified, and detailed basis for the objection, (iii) explain the proposed treatment of the claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

    3.    <u>Claims Estimation</u>

The Debtor or Post-Confirmation Debtor may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law, and (b) any contingent or unliquidated Claim pursuant to applicable law, including Bankruptcy Code §502(c), regardless of whether the Debtor or Post-Confirmation Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§157 and 1334 to estimate any Disputed Claim, contingent Claim or

unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Post-Confirmation Debtor may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Post-Confirmation Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding Bankruptcy Code §502(j), in no event shall any Holder of a Claim that has been estimated pursuant to Bankruptcy Code §502(c) or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 20 days after the date on which such Claim is estimated.  Each of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

        4.     <u>Deadline to File Objections to Claims</u>

Any objections to Claims, other than Administrative Claims, shall be Filed no later than the Claims Objection Bar Date.

**B.**     **Claims Allowance**

Except as expressly provided herein or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim.  Except as expressly provided by the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Post-Confirmation Debtor will have and shall retain after the Effective Date any and all rights and defenses that the Debtor had with respect to any Claim as of the Petition Date.

**C.**     **Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine any such controversy before the Confirmation Date.

**D.**     **Disallowance of Claims**

All Claims of any Entity from which property is sought by the Debtor or the Post-Confirmation Debtor under Bankruptcy Code §§542, 543, 550 or 553, or that the Debtor or Post-Confirmation Debtor alleges is a transferee of a transfer that is avoidable under Bankruptcy Code

§§522(f), 522(h), 544, 545, 547, 548, 549 or 724(a), shall be disallowed if such Entity or transferee has failed to turnover such property.

EXCEPT AS OTHERWISE AGREED TO BY THE DEBTOR OR POST-CONFIRMATION DEBTOR, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE CONFIRMATION HEARING.

E.      Amendments to Claims

On or after the Effective Date, except as otherwise provided herein, a Claim may not be re-Filed or amended without the prior authorization of the Bankruptcy Court or the Post-Confirmation Debtor, and any such re-Filed or amended Claim shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      Conditions Precedent to Confirmation

It shall be conditions precedent to Confirmation of the Plan that:

1.      all provisions, terms, and conditions of the Plan are approved in the Confirmation Order;

2.      the proposed Confirmation Order shall be in form and substance acceptable to the Debtor.

B.      Conditions Precedent to Consummation and Occurrence of Effective Date

It shall be a condition to Consummation of the Plan and occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

1.      the Sale Order shall have been entered and become a Final Order in form and substance acceptable to the Debtor;

2.      the closing on the Sale of the Jagger Lane Property shall have occurred;

3.      the Confirmation Order shall have been entered and become a Final Order in form and substance acceptable to the Debtor;

4.      all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery, and (b) been executed; and

5.      all actions, documents, certificates and agreements necessary to implement this Plan shall have been affected or executed and delivered to the required parties.

C.      Waiver of Conditions

The conditions precedent to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtor or Post-Confirmation Debtor, as the case may be, on notice to the United States Trustee, without further notice, leave or order of the Bankruptcy Court, or any formal action other than by proceeding to confirm or consummate the Plan.

D.      Effect of Non-Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders or any other Entity in any respect.

## ARTICLE X.

## SETTLEMENT, INJUNCTION AND RELATED PROVISIONS

A.      Compromise and Settlement

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Bankruptcy Code §§510(b) and 510(c) or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.  The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, her Estate, and all Holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to Bankruptcy Code §363 and Bankruptcy Rule 9019.

In accordance with the provisions of this Plan, and pursuant to Bankruptcy Code §363 and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Post-Confirmation Debtor may, in its sole and absolute discretion, compromise and settle Claims against the Debtor, and (2) the Post-Confirmation Debtor may, in its sole and absolute discretion, compromise and settle Causes of Action against other Entities.

B.      Exculpation

TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), THE DEBTOR AND HER PROFESSIONALS SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ACTS BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, OR ANY ACT BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR'S ASSETS AND LIABILITIES; PROVIDED, HOWEVER, THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO HER DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

C.      Preservation of Rights of Action / Reservation of Rights

1.      <u>Maintenance of Causes of Action</u>

Except as otherwise provided in the Plan or Confirmation Order, including the exculpation provisions thereof, after the Effective Date, the Post-Confirmation Debtor shall retain all rights to and shall have standing to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including in an adversary proceeding Filed in the Chapter 11 Case.

The Post-Confirmation Debtor may, in its sole discretion, elect not to pursue any Causes of Action that the Post-Confirmation Debtor otherwise has authority to pursue hereunder, the pursuit of which the Post-Confirmation Debtor deems not to be in the best interest of the Estate.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor or its Estate had immediately prior to the Petition Date, against or with respect to any Claim whether impaired or left unimpaired by the Plan. Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, the Post-Confirmation Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses which Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of the Debtor respecting any Claim whether impaired or left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, any claims, rights, or Causes of Action that the Debtor may hold against any Entity shall vest in the Post-Confirmation Debtor on the Effective Date and the Post-Confirmation Debtor shall have the exclusive right and authority to institute, prosecute, abandon, settle or compromise any and all such claims, rights and Causes of Action, and the Post-Confirmation Debtor shall not require the consent or approval of any party or any further order of the Bankruptcy Court to settle or resolve any claims, rights and Causes of Action.

2.      Preservation of All Causes of Action Not Expressly Sold, Settled or Released

Unless a claim or Cause of Action against a Holder of a Claim or other Entity is expressly waived, abandoned, relinquished, released, compromised, assigned, or settled in the Plan or any Final Order (including the Confirmation Order), including the exculpation provisions thereof, the Debtor expressly reserves such claim or Cause of Action for later action by the Post-Confirmation Debtor (including claims and Causes of Action of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan, or any other Final Order (including the Confirmation Order), including the exculpation provisions thereof. In addition, the Debtor or the Post-Confirmation Debtor, as the case may be, reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant, or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits except where such claims or Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).

D.      Preservation of Insurance

Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover claims or causes of action against the Debtor, any other Entity, or any other Person.

E.      Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES AGAINST THE DEBTOR OR PROPERTY OF THE DEBTOR'S ESTATE, INCLUDING BUT NOT LIMITED TO THE UNIT, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY PERSON OR ENTITY ENTITLED TO EXCULPATION UNDER THIS PLAN, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST ANY PERSON OR ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES, UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO BANKRUPTCY CODE §553 OR OTHERWISE; PROVIDED, HOWEVER, THAT THE FOREGOING INJUNCTION SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY PERSON OR ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS,

ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, to the extent legally permissible, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Persons and Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable, and to adjudicate and, if necessary, liquidate, any Claims arising under any Executory Contract or Unexpired Lease;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.      resolve any issues related to any order entered by the Bankruptcy Court in the Chapter 11 Case;

6.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

7.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Post-Confirmation Debtor after the Effective Date; provided that the Post-Confirmation Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

8.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

9.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.      enforce the exculpations and injunctions contained in this Plan;

12.      resolve any cases, controversies, suits or disputes with respect to any injunction, exculpation or other provisions contained in this Plan, and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

13.      enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.      resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

15.      enter an order and final decree closing the Chapter 11 Case.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.      Payment of Statutory Fees

All fees and any applicable interest payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date of the Plan.  Thereafter, all fees, and any applicable interest, payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

B.      Quarterly Reports

The Post-Confirmation Debtor shall file quarterly reports after the Confirmation Date and provide copies to the U.S. Trustee, and schedule post-confirmation status conferences with the Court which shall be held subject to order of the Court.

C.      Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy

Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, Post-Confirmation Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Bankruptcy Code §1127(b) or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

D.      Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other Entity, or any Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, or any other Entity.

E.      Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

F.      Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order becomes a Final Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Interests or other Entity; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

G.      Further Assurances

The Debtor or the Post-Confirmation Debtor, as applicable, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.      Severability

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to be invalid, void or unenforceable, the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum

extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance acceptable to the Debtor; provided further that the Debtor may seek an expedited hearing before the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

I.    **Exemption from Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the sale of the Jagger Lane Property will not be subject to any stamp tax or other similar tax.

J.    Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent to:

> WHITE & WOLNERMAN, PLLC
> 950 THIRD AVE., 11TH FLOOR
> NEW YORK, NEW YORK 10022
> Attn:    Randolph E. White, Esq.
>            rwhite@wwlawgroup.com

Dated:  As of November 12, 2020

Respectfully submitted,

Cecilia B. Kempton